UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

VIRGINIA ANN SIGNORELLI GERRETS,                CIVIL ACTION
ET AL.

VERSUS                                          NO. 21-2387

CAPITAL ONE NATIONAL                            SECTION "B"(2)
ASSOCIATION, ET AL.

ORDER AND REASONS

Before the Court are defendants Joseph Pappalardo, Sr. and Latter & Blum Property Management, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Rec. Doc. 18), plaintiffs Virginia Ann Signorelli Gerrets and Vincent J. Signorelli's response in opposition (Rec. Doc. 28), and defendant Capital One's response in support of defendants' motion to dismiss (Rec. Doc. 27).

For the reasons discussed below,

**IT IS ORDERED** that **plaintiffs submit supplemental briefing** as to whether defendants were improperly joined **no later than Friday, July 8, 2022;** and **defendants' reply** to same is due **within 5 days after receipt.** Thereafter, the Court will rule on defendants' pending motion to dismiss pursuant to Rule 12(b)(1) (Rec. Doc. 18).

I.   FACTS AND PROCEDURAL HISTORY

This case is about a lease dispute. Plaintiffs Virginia Ann Signorelli Gerrets and Vincent J. Signorelli own and operate a

commercial building located at 7033 Canal Boulevard in New Orleans, Louisiana called the Signorelli Building. Rec. Doc. 1-1 at 5. On January 29, 1970, Hibernia National Bank ("Hibernia"), the predecessor in interest to defendant Capital One National Association ("Capital One"), first signed a lease for a commercial space at the Signorelli Building totaling approximately 3,252 square feet on the Building's first floor and approximately 2,033.7 on the second. *Id.* This lease was then renewed on January 31, 1994. *Id.* Plaintiffs entered into another commercial lease with Hibernia on or about September 10, 1998, which permitted Hibernia to lease an additional portion of the Signorelli Building. *Id.* Combined with the 1994 lease, Hibernia's leased space now totaled 4,642.4 square feet of interior space and 1,528 square feet of drive-up banking facilities. *Id.* at 5-6.

The 1998 lease also included an "alterations" provision under Article 14. It states:

> Tenant will not make or cause to be made any alterations, additions, or improvements to or of the premises or any part of the premises, or attach any fixture or equipment to the premises, without first obtaining landlord's written consent. Any alterations, additions, or improvements to the premises consented to by landlord will be made by tenant at tenant's sole cost and expense according to plans and specifications approved by landlord, and any contractor or person selected by tenant to make them must first be approved by landlord. . . . All alterations, additions, fixtures, and improvements, whether temporary or permanent in character, made in or upon the premises either by tenant or landlord (other than furnishings, trade fixtures, and equipment installed by tenant), will be landlord's

> property and, at the end of the term of this lease, will
> remain on the premises without compensation to tenant.
> If landlord requests, tenant will remove all such
> alterations, fixtures, and improvements from the
> premises and return the premises to the condition in
> which they were delivered to tenant. Upon such removal
> tenant will immediately and fully repair any damage to
> the premises occasioned by removal.

Rec. Doc. 11-3 at 18. Under this provision, Hibernia made alterations in 1998, including placing a new Hibernia sign and canopy over the bank's front door and a new canopy over the existing ATM near the front door. Rec. Doc. 1-1 at 6. Hibernia took delivery of the leased premises on August 1, 1998. *Id.* at 8; Rec. Doc. 11-2 at 6.

On August 29, 2005, Hurricane Katrina's storm surge flooded New Orleans, damaging the Signorelli Building and Hibernia's leased premises. Rec. Doc. 1-1 at 6. Hibernia's banking operations at the Building temporarily ceased as a result. *Id.* A few months later, Capital One acquired ownership of Hibernia and Hibernia's assets, including Hibernia's lease hold for their commercial space at the Signorelli Building. *Id.* In February 2006, a tornado further damaged Hibernia's leased commercial space, which included damage to exterior brick veneer walls and two second floor walls. *Id.;* Rec. Doc. 11-3 at 22. Later in 2006, Capital One informed plaintiffs that it desired to continue Hibernia's retail banking business at the Signorelli Building under the Capital One name and an expanded space. Rec. Doc. 1-1 at 6-7. The parties' memorialized

the bargain over these changes in a document entitled "First Amendment to Lease" ("First Amendment"). *Id.* at 7. The First Amendment "amends and supplements the Existing Lease in the specific respects set forth below, and as so amended and supplemented by this First Amendment, the Existing Lease continues in full force and effect, without interruption." Rec. Doc. 11-3 at 2. The First Amendment further states that the 1998 lease and the First Amendment "shall be read together as one unified instrument." *Id.*

This Amendment provided for various changes to the 1998 Lease. *See* Rec. Doc. 1-1 at 7. First, it acknowledged that all references to Hibernia National Bank were to be replaced with Capital One National Association. Rec. Doc. 11-3 at 2. Second, it includes that "Tenant intends to engage in an expansion and reconstruction program with respect to the leased premises." *Id.* at 5. To reflect this expansion, Article 1(n) of the 1998 lease was amended to state the Leased Premises as 11,458 square feet, rather than 4,642.4 square feet. *Id.* at 7. The term "Pre-Existing Premises" would now "refer to the Leased Premises in existence under the Existing Lease, prior to the Expansion program" and "All of the Premises other than the Pre-Existing Premises" would now be referred to as the "Expansion Premises." *Id.*

Third, Article 14 was amended to add various sub-provisions. *Id.* Article 14 in the 1998 lease remained the same, but the parties

renumbered it 14.1 and added seven additional sub-provisions. *Id.*
at 7-11. These new sub-provisions detailed plaintiffs' and Capital
One's "obligations with respect to the repair, redevelopment and
construction of the leased premises." *Id.* at 8. Fourth, the parties
agreed to increase Capital One's rent from $6,372.40 to $16,232.17
per month. *Id.* at 4-5. The First Amendment did not alter Article
13 of the 1998 lease, which states "Upon the expiration or
termination of this lease, tenant will surrender the premises to
landlord in good order, condition, and repair, ordinary wear and
tear excepted." Nor did the Amendment alter Article 16 of the 1998
lease, which provides that:

> At the end of this lease, tenant will promptly quit and
> surrender the premises in good order, condition, and
> repair, ordinary wear and tear excepted. . . . Whether
> or not tenant is in default, tenant will remove such
> alterations, additions, improvements, trade fixtures,
> equipment, and furniture as landlord has requested in
> accordance with Article 14.

Rec. Doc. 11-2 at 18-19. Furthermore, after the First Amendment,
Capital One's lease would now expire on July 31, 2021, instead of
July 31, 2013. Rec. Doc. 11-3 at 5.

Joseph S. Pappalardo, Sr., a Louisiana citizen, a licensed
Louisiana real estate broker, and an attorney licensed to practice
law in Louisiana, negotiated with Hibernia/Capital One on
plaintiffs' behalf as to the terms of the 1998 lease and First
Amendment. Rec. Doc. 1-1 at 3, 10. At this time, he was employed
as an officer of defendant Latter & Blum Property Management, Inc.

("Latter & Blum"), a Louisiana juridical entity with its principal place of business in Louisiana. *Id.* Pappalardo also drafted the 1998 lease and advised plaintiffs as to the terms of the leases. *Id.* at 11. Throughout this process, Pappalardo acted as plaintiffs' attorney, property manager, and real estate broker for the Signorelli Building. *Id.* at 10-11.

After executing the First Amendment, both plaintiffs and Capital One completed their stipulated repair, redevelopment, and construction of the leased premises. *Id.* at 8-9. Thereafter, Capital One maintained its retail banking business at the premises continuously from 2006-2021. *Id.* at 9. In January 2020, Capital One decided that it no longer cared to operate at Signorelli Building, and therefore, would not be renewing its lease term. *Id.* Capital One allegedly sent a letter dictating as much to Pappalardo and Latter & Blum ("Real Estate defendants") via Federal Express to the address listed in the First Amendment. *Id.* However, since execution of the First Amendment, Real Estate defendants moved offices without updating the address for written notification under the lease and without otherwise taking measures to ensure receipt of written notifications from Capital One. *Id.* Accordingly, plaintiffs did not receive notice that Capital One did not wish to renew their lease until January 2021. *Id.* Around that time, Pappalardo communicated with Capital One regarding its alleged obligation to restore the leased premises to its condition

at delivery pursuant to Article 14 of the 1998 lease. *Id.* On or about April 22, 2021, Capital One's management team sent an email to Pappalardo relaying its refusal to restore the property as plaintiffs wished. *Id.* Once plaintiffs learned of Capital One's refusal, they retained undersigned counsel to replace Pappalardo. *Id.* at 10.

On June 28, 2021, plaintiffs "made written demand on Capital One for restoration of the premises to its condition at delivery, in accord with the notification requirements of the First Amendment," which plaintiffs estimate will cost approximately $800,000. *Id.* However, Capital One still refused to comply with plaintiffs' demand. *Id.* Accordingly, on November 5, 2021, plaintiffs filed suit in Civil District Court for the Parish of Orleans alleging that Capital One is liable for breach of contract, breach of duty of good faith and fair dealing, and breach of lessee's principal obligation. *Id.* at 12-13. Alternatively, "[i]f it is determined that Capital One did not breach the Unified Instrument," then plaintiffs "plead in the alternative that Defendants, Pappalardo and Latter & Blum, are at fault for causing Plaintiffs' damage." *Id.* at 14. In that case, plaintiffs allege the Real Estate defendants are liable for breach of Broker's fiduciary standard of care, negligence, and negligent misrepresentation. *Id.* at 14-15. Plaintiffs also allege that

Pappalardo is liable for breach of attorney's standard of care. *Id.* at 15.

On December 28, 2021, Capital One removed the case to this Court on the basis that Real Estate defendants were improperly joined to defeat diversity jurisdiction. *See* Rec. Doc. 1. Capital One then filed a motion to dismiss on January 5, 2022 for failure to state a claim.[1] Rec. Doc. 11. On March 3, 2022, Real Estate defendants filed a motion to dismiss for lack of jurisdiction, arguing they should be dismissed because plaintiffs failed to deny that Real Estate defendants were fraudulently joined to defeat diversity jurisdiction. Rec. Doc. 18.

## II.   LAW AND ANALYSIS

### A. Rule 12(b)(1) Standard

Federal courts have limited jurisdiction and cannot adjudicate claims unless the authority to do so is conferred by statutory or constitutional power. *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Thus, federal courts must dismiss lawsuits whenever it appears they lack subject matter jurisdiction. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). District courts considering whether

---

[1] Capital One's motion to dismiss is still pending before this Court and will be decided in a separate ruling. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)) (stating that when considered in conjunction with other Rule 12 motions, attacks on subject matter jurisdiction should be considered before addressing attacks on the merits).

subject matter jurisdiction exists may evaluate: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The plaintiff "constantly bears the burden of proof" that subject matter jurisdiction exists. *Id.* (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). When considered in conjunction with other Rule 12 motions, attacks on subject matter jurisdiction should be considered before addressing attacks on the merits. *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*)). Ultimately, a motion to dismiss for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010.

### B. Removal and Diversity Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "To determine whether jurisdiction is present for

removal, [courts] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id*. The removing party bears the burden of proving that federal jurisdiction exists, and therefore, that removal was proper. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

District courts have original jurisdiction over civil actions that are (1) between citizens of different states and (2) where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and cost. *See* 28 U.S.C. § 1332(a)(1). A corporation is a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (quoting 28 U.S.C. § 1332(c)(1)). An individual is a citizen of the state where domiciled. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

**C. Party Alignment**

In conducting a diversity jurisdiction analysis, courts are "not bound by the way plaintiff formally aligns the parties in his original pleading." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984) (citations omitted). To determine proper party alignment, "courts must look

beyond the pleadings, and arrange the parties according to their sides in the dispute." *Ashford v. Aeroframe Servs.*, L.L.C., 907 F.3d 385, 387 (5th Cir. 2018) (quoting *City of Indianapolis v. Chase Nat. Bank of City of N.Y.*, 314 U.S. 63, 69 (1941)). "[T]here must be an actual, substantial controversy between citizens of different states to sustain diversity jurisdiction." *Zurn Indus., Inc. v. Acton Const. Co., Inc.*, 847 F.2d 234, 236 (5th Cir. 1988).

When deciding whether parties should be realigned, courts must analyze "whether there is a 'collision of interest' between the parties in question." *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 681 n.2 (5th Cir. 2012). The necessary "collision of interest" is ascertained "from the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (quoting *Indianapolis*, 314 U.S. at 69). In the Fifth Circuit, "[t]he generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Id.* (quoting *Lowe*, 723 F.2d at 1178). "It is often difficult to determine on which side of a controversy the interests of a party really lie, but that determination must be made from the actualities of the litigation." *Alexander v. Washington*, 274 F.2d 349, 351 (5th Cir. 1960).

Defendant Capital One removed this case to federal court based on diversity jurisdiction and the claim that Real Estate defendants were improperly joined to defeat diversity. Rec. Doc. 1 at 3-11. Plaintiffs dispute that these defendants were improperly joined, but concede that this Court can properly exercise subject matter jurisdiction over all defendants. Rec. Doc. 28 at 3. Plaintiffs argue that because their interests are "sufficiently aligned" with the Real Estate defendants "over the primary issue in dispute," then the Court may realign Real Estate defendants with plaintiffs. *Id.* However, in this case it would be improper for the Court to realign these parties.

Plaintiffs' principal purpose in filing the instant action is to determine who is liable for the "cost of restoration and repairs" needed to convert the space Capital One previously leased at the Signorelli Building back to the structure that existed when Capital One's predecessor took delivery of the space in 1998. *See generally* Rec. Doc. 1-1. Plaintiffs believe Capital One is liable because the unified lease agreement allegedly required Capital One to restore the space to its preexisting structure. *Id.* at 10-11. Alternatively, if Capital One is not required to convert the space, plaintiffs allege Real Estate defendants are liable for damages because the lease agreement, which these defendants helped negotiate and draft, did not reflect plaintiffs' understanding and belief that Capital One's failure to restore the premises to its

condition at delivery would breach the lease contract. *See id.* at 8-9, 14.

Having determined the principal purpose of the suit, we find that realigning Real Estate defendants with plaintiff would not place the parties with the same "ultimate interests" in the outcome of the action on the same side. *See Griffin*, 621 F.3d at 388. Whether Capital One or Real Estate defendants are liable, plaintiffs' ultimate interest is ensuring that plaintiffs receive damages representing the costs to return the leased premises to the condition it was in at the time of delivery. *See* Rec. Doc. 1-1 at 9-10, 16; *see also Gurley v. White*, No. 16-16274, 2016 WL 7228867, at *3 (E.D. La. Dec. 14, 2016); *Francis v. Greenwich Ins. Co.*, No. 16-15901, 2017 WL 894654, at *3 (E.D. La. Mar. 7, 2017). Real Estate defendants on the other hand, are ultimately interested in avoiding liability for any damages. *See* Rec. Doc. 18-1 at 3 (arguing for their own dismissal). Because plaintiffs assert that Real Estate defendants could be liable for damages in this lease dispute, there is still "an actual dispute between the parties to be realigned." *Kahn Swick & Foti, LLC v. Spector Roseman Kodroff & Willis, PC*, No. 14-1979, 2014 WL 7140132, at *4 (E.D. La. Dec. 12, 2014). As "parties defendant will not be realigned if there remains in the case any issue as to which plaintiff needs some relief against such parties," Real Estate defendants should not be

realigned with plaintiffs here. *See id.* (quoting *Tex. Pac. Coal &*
*Oil Co. v. Mayfield*, 152 F.2d 956, 957 (5th Cir. 1946)).

Still, plaintiffs maintain that they are "plainly aligned"
with Real Estate defendants. *Id.* They claim that "the principal
purpose of both Plaintiffs *and* [Real Estate defendants] is to
ensure that Capital One comp[lies] with its obligations under the
leases to convert the drive thru lanes back into habitable,
enclosed, and air-conditioned space." Rec. Doc. 28 at 6 (emphasis
added). Moreover, they assert any claims against Real Estate
defendants are "ancillary to the primary objective of holding
Capital One liable for the breach of its obligations under the
lease agreements," especially because plaintiffs style them as
"alternative claims." *Id.* at 6-7. However, plaintiffs do not
provide any evidence that it is Real Estate defendants' principal
purpose to "determine whether Capital One has breached its
obligations under the lease agreements." *Id.* at 6; *cf.*
*Indianapolis*, 314 U.S. at 74 (finding that a plaintiff and
defendant arguing in favor of a lease's validity in a lease dispute
shared a principal purpose, and thus were "partners in litigation,"
partly because the defendant's common stockholders were to benefit
if the lease was valid). The record does not reflect that Real
Estate defendants believe Capital One breached its obligations or
that they share plaintiffs' understanding that the lease
agreements required Capital One to restore the leased premises

upon lease termination. *Cf. Id.*, 314 U.S. at 73 (realigning a defendant and plaintiff in a lease dispute partly because they "both have always contended the validity of the lease and the City's obligation under it" and because the defendant "at all times asserted that the lease in question is valid"). Without knowing whether Real Estate defendants do share plaintiffs' interpretation of the contract, it is difficult to say that they share the same principal purpose in finding Capital One liable for its breach. *See Alexander*, 274 F.2d at 351 (requiring the Court to ascertain the parties' interests based on "actualities of the litigation," not "mere possibilities").

Nevertheless, plaintiffs suggest that they share the same principal purpose as Real Estate defendants because if plaintiffs are successful in finding Capital One liable, then "this litigation will be concluded against all parties." Rec. Doc. 28 at 6. In support of these arguments, plaintiff analogizes to *Hess v. Union Std. Ins. Co.*, No. 09-3789, 2009 WL 3486649, at *1-2 (E.D. La. Oct. 23, 2009). There, the plaintiff filed a wrongful death suit against the driver, and driver's employer, for killing her husband in a motor vehicle accident. *Hess*, 2009 WL 3486649, at *1. She also sued her husband's children and succession for declaratory judgment determining the percentage of ownership of the survival action. *Id.* The court found that the request for declaratory judgment was ancillary to the principal purpose of recovering money

for the decedent's death and the parties to the declaratory judgment issue all share the same ultimate interest in finding the driver's employer liable and "recovering as much money as possible from [the employer]—regardless of the individual apportionment of each recovery." *Id.* at *1-2.

Unlike *Hess*, however, Real Estate defendants do not share an ultimate interest with plaintiff in finding Capital One liable, because a "bona fide controversy" still exists between plaintiff and the non-diverse defendants. *Cf. Indemnity Ins. Co. of N. Am. v. First Nat'l Bank at Winter Park, Fla.*, 351 F.2d 519, 523 (5th Cir. 1965) (realigning a defendant with the plaintiff because there was "no bona fide controversy between them"). In *Hess*, the plaintiff and declaratory judgment defendants all wanted to find one defendant liable for as much money as possible. 2009 WL 3486649, at *1-2. Here, plaintiffs are ultimately interested in "holding liable and recovering damages from" those parties responsible for plaintiffs' damages. *See Gurley*, 2016 WL 7228867, at *3 (finding plaintiff's principal purpose was "hold[ing] liable and recover[ing] damages from those parties whose negligence caused [the plaintiff's] injuries," when in a motor vehicle accident, plaintiff sued one defendant or "in the alternative" another defendant); *Francis*, 2017 WL 894654, at *3 (finding same); *see* Rec. Doc. 1-1 at 8-10, 13, 16 (pleading alternative theories of liability for their damages). Real Estate defendants are

16

possibly one of the responsible parties, and consequently, their interests collide with plaintiffs'. *See GuideOne*, 687 F.3d at 681 n.2. "If a plaintiff and one of the defendants stand to benefit from a finding that a co-defendant is liable, it does not follow that the defendant with the most potential to be found not liable should be realigned as a plaintiff." *Gurley*, 2016 WL 7228867, at *3 n.3 (citing *Mayfield*, 152 F.2d at 957). Plaintiffs are not barred from pleading in the alternative, and when they do, it does not automatically suggest the defendant who is alternatively liable shall now be realigned with the plaintiff. *See Francis*, 2017 WL 894654, at *3; *Gurley*, 2016 WL 7228867, at *3. Accordingly, the Court will not realign Real Estate defendants with plaintiffs.

**D. Waiver**

In declining to realign Real Estate defendants, the Court must then determine whether these defendants should be dismissed or whether the entire matter should be remanded to state court. Real Estate defendants claim that as plaintiffs "failed to oppose the grounds for Capital One's removal (that Plaintiffs fraudulently joined Movers to defeat diversity) Plaintiffs have assented to its truth, and thus, have submitted to Federal diversity jurisdiction." Rec. Doc. 18-1 at 2. As such, they believe they should be dismissed "in order to retroactively create diversity jurisdiction." *Id.* at 3. Capital One agrees that "Plaintiffs have conceded jurisdiction exists in this Court and

waived their right to remand this matter." Rec. Doc. 27 at 8.
Capital One argues that because plaintiffs did not object to
federal jurisdiction after months of litigating in this forum,
failure to respond to the notice of removal was an admission that
Real Estate defendants were improperly joined to defeat diversity
jurisdiction, and thus, dismissal against these defendants is
proper. *Id.*

However, by claiming that plaintiffs waived their right to
seek remand, defendants misunderstand the rules of subject matter
jurisdiction. 28 U.S.C. § 1447(c) plainly states that "[a] motion
to remand the case on the basis of any defect other than lack of
subject matter jurisdiction must be made within 30 days after the
filing of the notice of removal under section 1446(a)." "A district
court shall not have jurisdiction of a civil action in which any
party, by assignment or otherwise, has been improperly or
collusively made or joined to invoke the jurisdiction of such
court." 28 U.S.C. § 1359. "The doctrine of improper joinder
implements our duty to not allow manipulation of our jurisdiction."
*Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004).
When a defendant claims improper joinder upon removal to federal
court, "the district court's first inquiry is whether the removing
party has carried its heavy burden of proving that the joinder was
improper." *Id.* Until then, "the court does not have the authority
to do more; it lacks the jurisdiction to dismiss a case on its

merits." *Id.* Subject matter jurisdiction is a statutory requirement and "[a] party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Mitchell L. Firm, L.P. v. Bessie Jeanne Worthy Revocable Tr.*, 8 F.4th 417, 422 (5th Cir. 2021) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

Here, plaintiffs did not respond to Capital One's notice of removal within thirty days, but they were not required to do so. *See* 28 U.S.C. § 1447(c). Defendants base this Court's jurisdiction on diversity jurisdiction due to fraudulent joinder. *See* Rec. Doc. 1 at 3-11. Accordingly, if plaintiffs were to dispute defendants' removal, it would not be based on a procedural defect, but instead on whether this Court lacks original subject matter jurisdiction over the matter. *See Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783, 787 (5th Cir. 1993) ("Only in the case of a lack of subject matter jurisdiction—such as no diversity of citizenship, or the absence of a federal question if that were the sole ground for removal—may the plaintiff object to removal after the thirty-day limit."); *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991) ("[A] 'procedural' defect is any defect that does not go to the question of whether the case originally could have been brought in federal district court."). Because whether Real Estate defendants have been improperly joined implicates "whether the case originally could have been brought in

federal district court," any argument that Real Estate defendants were properly joined, and therefore that this Court lacks jurisdiction, can be brought after the thirty-day limit. *See Baris*, 932 F.2d at 1540; 28 U.S.C. § 1447(c). Thus, if plaintiffs object to federal jurisdiction based on an absence of diversity jurisdiction, as they do in their response in opposition, that objection is not waived as defendants suggest. *See* Rec. Doc. 28 at 3 (disputing the conclusion that "complete diversity of citizenship exists because there is not arguably a reasonable basis for predicting that state law would allow recovery" against Real Estate defendants).

Still, Capital One insists that "failure to respond to a contested motion typically constitutes consent to such allegations." Rec. Doc. 27 at 8. Yet, the very case that Capital One cites as support for this assertion states clearly, "Because a removal petition does not require responsive pleadings, . . . failure to contest facts alleged in such a position cannot be considered an admission." *Sprowls v. Oakwood Mobile Homes, Inc.*, 119 F. Supp. 2d 694, 696 (W.D. Ky. 2000) (citing *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951)). It remains that subject matter jurisdiction is a statutory requirement and "[a] party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Mitchell*, 8 F.4th at 422. Thus, if plaintiffs dispute that diversity jurisdiction exists in this matter, they

may move to that extent after the thirty-day time limit under § 1447(c). *See Sprowls*, 119 F. Supp. 2d at 696 ("Because fraudulent joinder goes to the very existence of this court's subject matter jurisdiction, the thirty day time limit of section 1447(c) does not apply."); *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 279-80, 283-84 (5th Cir. 2007) (finding that the plaintiff's failure to refute the defendants' improper joinder claims did not constitute admission of those factual allegations); *Williams*, 985 F.2d at 787.[2]

As plaintiffs have not waived their right to seek remand for lack of subject matter jurisdiction, the Court now permits them to do so before ruling on Real Estate defendants' motion to dismiss for subject matter jurisdiction. Plaintiffs state that they did not assent to the assertion that Real Estate defendants were fraudulently joined and disputes the conclusion that there is no "reasonable basis for predicting that state law would allow recovery" against Real Estate defendants. Rec. Doc. 28 at 3. However, plaintiffs do not provide any further response to defendants' claims that Real Estate defendants were fraudulently

---

[2] Capital One also cites to *Wilson v. Republic Iron & Steel Co.* and *Lowell Staats Mining Co. v. Phila. Elec. Co.* to argue that "failure to oppose to statements in petition for removal meant that plaintiff[s] assented to their truth." Rec. Doc. 28 at 7 (citing 257 U.S. 92, 97-98 (1921); 651 F. Supp. 1364, 1365-66 (D. Col. 1987)). However, the Court finds that the instant matter does not fall squarely within the scope of *Wilson*. Plaintiffs have not assented to the truth of the removal's allegations as they "dispute" the conclusion that Real Estate defendants were improperly joined. Rec. Doc. 28 at 3; *see also Matherne Instrumentation Specialists, Inc. v. Mighty Enters., Inc.*, No. 15-1159, 2015 WL 3505032, at *4 (E.D. La. June 3, 2015).

joined. *See generally id.* To ascertain whether Real Estate defendants should be dismissed for improper joinder and lack of subject matter jurisdiction, or whether the matter should be fully remanded to the Civil District Court for the Parish of Orleans, the Court requires a response to defendants' claims of improper joinder. *See generally* Rec. Doc. 27; *see also Gasch*, 491 F.3d at 281 (noting that the Court asked for and received supplemental briefing on whether the non-diverse defendant was improperly joined when the parties had not previously provided briefing on the issue).

New Orleans, Louisiana this 15th day of June, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE