UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIRGINIA ANN SIGNORELLI GERRETS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 21-2387 |
| CAPITAL ONE NATIONAL ASSOCIATION, ET AL. | SECTION "B"(2) |

## ORDER AND REASONS

Before the Court are defendants Joseph Pappalardo, Sr. and Latter & Blum Property Management, Inc. ("Real Estate defendants")'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Rec. Doc. 18), plaintiffs Virginia Ann Signorelli Gerrets and Vincent J. Signorelli's response in opposition (Rec. Doc. 28), defendant Capital One National Association ("Capital One")'s response in support of defendants' motion to dismiss (Rec. Doc. 27), plaintiffs' supplemental memorandum and motion to remand (Rec. Doc. 32), defendant Capital One's response to plaintiff's supplemental memorandum (Rec. Doc. 35), Real Estate defendants' response to plaintiff's supplemental brief (Rec. Doc. 34), and plaintiffs' reply in support of their motion to remand (Rec. Doc. 38).

For the reasons discussed below,

**IT IS ORDERED** that Joseph Pappalardo, Sr. and Latter & Blum Property Management, Inc.'s motion to dismiss pursuant to Rule 12(b)(1) (Rec. Doc. 18) is **DENIED** without prejudice to re-urge in

1

state court, and plaintiffs' motion to remand is **GRANTED** (Rec. Doc. 32). The Clerk of Court is directed to return this case to the Civil District Court for the Parish of Orleans.

   **IT IS FURTHER ORDERED** that Capital One's motion to dismiss for failure to state a claim (Rec. Doc. 11) is **DISMISSED AS MOOT**.

## I.   FACTS AND PROCEDURAL HISTORY

   This case is about a lease dispute. Plaintiffs Virginia Ann Signorelli Gerrets and Vincent J. Signorelli own and operate a commercial building located at 7033 Canal Boulevard in New Orleans, Louisiana called the Signorelli Building. Rec. Doc. 1-1 at 5. On January 29, 1970, Hibernia National Bank ("Hibernia"), the predecessor in interest to defendant Capital One National Association ("Capital One"), first signed a lease for a commercial space at the Signorelli Building totaling approximately 3,252 square feet on the Building's first floor and approximately 2,033.7 on the second. *Id.* This lease was then renewed on January 31, 1994. *Id.* Plaintiffs entered into another commercial lease with Hibernia on or about September 10, 1998, which permitted Hibernia to lease an additional portion of the Signorelli Building. *Id.* Combined with the 1994 lease, Hibernia's leased space now totaled 4,642.4 square feet of interior space and 1,528 square feet of drive-up banking facilities. *Id.* at 5-6.

   The 1998 lease also included an "alterations" provision under Article 14. It states:

> Tenant will not make or cause to be made any alterations,
> additions, or improvements to or of the premises or any
> part of the premises, or attach any fixture or equipment
> to the premises, without first obtaining landlord's
> written consent. Any alterations, additions, or
> improvements to the premises consented to by landlord
> will be made by tenant at tenant's sole cost and expense
> according to plans and specifications approved by
> landlord, and any contractor or person selected by
> tenant to make them must first be approved by
> landlord. . . . All alterations, additions, fixtures,
> and improvements, whether temporary or permanent in
> character, made in or upon the premises either by tenant
> or landlord (other than furnishings, trade fixtures, and
> equipment installed by tenant), will be landlord's
> property and, at the end of the term of this lease, will
> remain on the premises without compensation to tenant.
> If landlord requests, tenant will remove all such
> alterations, fixtures, and improvements from the
> premises and return the premises to the condition in
> which they were delivered to tenant. Upon such removal
> tenant will immediately and fully repair any damage to
> the premises occasioned by removal.

Rec. Doc. 11-3 at 18. Under this provision, Hibernia made alterations in 1998, including placing a new Hibernia sign and canopy over the bank's front door and a new canopy over the existing ATM near the front door. Rec. Doc. 1-1 at 6. Hibernia took delivery of the leased premises on August 1, 1998. *Id.* at 8; Rec. Doc. 11-2 at 6.

On August 29, 2005, Hurricane Katrina's storm surge flooded New Orleans, damaging the Signorelli Building and Hibernia's leased premises. Rec. Doc. 1-1 at 6. Hibernia's banking operations at the Building temporarily ceased as a result. *Id.* A few months later, Capital One acquired ownership of Hibernia and Hibernia's assets, including Hibernia's lease hold for their commercial space

at the Signorelli Building. *Id.* In February 2006, a tornado further damaged Hibernia's leased commercial space, which included damage to exterior brick veneer walls and two second floor walls. *Id.*; Rec. Doc. 11-3 at 22. Later in 2006, Capital One informed plaintiffs that it desired to continue Hibernia's retail banking business at the Signorelli Building under the Capital One name and an expanded space.[1] Rec. Doc. 1-1 at 6-7. The parties' memorialized the bargain over these changes in a document entitled "First Amendment to Lease" ("First Amendment"). *Id.* at 7. The First Amendment "amends and supplements the Existing Lease in the specific respects set forth below, and as so amended and supplemented by this First Amendment, the Existing Lease continues in full force and effect, without interruption." Rec. Doc. 11-3 at 2. The First Amendment further states that the 1998 lease and the First Amendment "shall be read together as one unified instrument." *Id.*

This Amendment provided for various changes to the 1998 Lease. *See* Rec. Doc. 1-1 at 7. First, it acknowledged that all references to Hibernia National Bank were to be replaced with Capital One National Association. Rec. Doc. 11-3 at 2. Second, it includes

---

[1] Capital One disputes plaintiff's allegation that its leased premises were merely "expand[ed]." *See* Rec. Doc. 35 at 2; *see also* Rec. Doc. 1-1 at 6-7 ("Subsequently in 2006, Defendant, Capital One, indicated that it desired to continue Hibernia's retail banking business at the Leased Premises under the Capital One name. Capital One sought to extend the term of the 1998 Lease and also to *expand* its banking operations at the Leased Premises.") (emphasis added). Capital One claims "the premises were destroyed and needed to be entirely rebuilt." Rec. Doc. 35 at 2.

that "Tenant intends to engage in an expansion and reconstruction program with respect to the leased premises." *Id.* at 5. To reflect this expansion, Article 1(n) of the 1998 lease was amended to state the Leased Premises as 11,458 square feet, rather than 4,642.4 square feet. *Id.* at 7. The term "Pre-Existing Premises" would now "refer to the Leased Premises in existence under the Existing Lease, prior to the Expansion program" and "All of the Premises other than the Pre-Existing Premises" would now be referred to as the "Expansion Premises." *Id.*

Third, Article 14 was amended to add various sub-provisions. *Id.* Article 14 in the 1998 lease remained the same, but the parties renumbered it 14.1 and added seven additional sub-provisions. *Id.* at 7-11. These new sub-provisions detailed plaintiffs' and Capital One's "obligations with respect to the repair, redevelopment and construction of the leased premises." *Id.* at 8. Fourth, the parties agreed to increase Capital One's rent from $6,372.40 to $16,232.17 per month. *Id.* at 4-5. The First Amendment did not alter Article 13 of the 1998 lease, which states "Upon the expiration or termination of this lease, tenant will surrender the premises to landlord in good order, condition, and repair, ordinary wear and tear excepted." Nor did the Amendment alter Article 16 of the 1998 lease, which provides that:

> At the end of this lease, tenant will promptly quit and surrender the premises in good order, condition, and repair, ordinary wear and tear excepted. . . . Whether

> or not tenant is in default, tenant will remove such
> alterations, additions, improvements, trade fixtures,
> equipment, and furniture as landlord has requested in
> accordance with Article 14.

Rec. Doc. 11-2 at 18-19. Furthermore, after the First Amendment, Capital One's lease would now expire on July 31, 2021, instead of July 31, 2013. Rec. Doc. 11-3 at 5.

Joseph S. Pappalardo, Sr., a Louisiana citizen, a licensed Louisiana real estate broker, and an attorney licensed to practice law in Louisiana, negotiated with Hibernia/Capital One on plaintiffs' behalf as to the terms of the 1998 lease and First Amendment. Rec. Doc. 1-1 at 3, 10. At this time, he was employed as an officer of defendant Latter & Blum Property Management, Inc. ("Latter & Blum"), a Louisiana juridical entity with its principal place of business in Louisiana. *Id.* Pappalardo also drafted the 1998 lease and advised plaintiffs as to the terms of the leases. *Id.* at 11. Throughout this process, Pappalardo acted as plaintiffs' attorney, property manager, and real estate broker for the Signorelli Building. *Id.* at 10-11.

After executing the First Amendment, both plaintiffs and Capital One completed their stipulated repair, redevelopment, and construction of the leased premises. *Id.* at 8-9. Thereafter, Capital One maintained its retail banking business at the premises continuously from 2006-2021. *Id.* at 9. In January 2020, Capital One decided it no longer cared to operate at Signorelli Building,

and therefore, would not be renewing its lease term. *Id.* Plaintiffs did not receive notice that Capital One did not wish to renew their lease until January 2021. *Id.* Around that time, Pappalardo communicated with Capital One regarding its alleged obligation to restore the leased premises to its condition at delivery pursuant to Article 14 of the 1998 lease. *Id.* On or about April 22, 2021, Capital One's management team sent an email to Pappalardo relaying its refusal to restore the property as plaintiffs wished. *Id.* Once plaintiffs learned of Capital One's refusal, shortly thereafter, they retained new counsel to replace Pappalardo.

On June 28, 2021, plaintiffs "made written demand on Capital One for restoration of the premises to its condition at delivery, in accord with the notification requirements of the First Amendment," which plaintiffs estimate will cost approximately $800,000. *Id.* at 10. However, Capital One still refused to comply with plaintiffs' demand. *Id.* Accordingly, on November 5, 2021, plaintiffs filed suit in Civil District Court for the Parish of Orleans alleging that Capital One is liable for breach of contract, breach of duty of good faith and fair dealing, and breach of lessee's principal obligation. *Id.* at 12-13. Alternatively, "[i]f it is determined that Capital One did not breach the Unified Instrument," then plaintiffs "plead in the alternative that Defendants, Pappalardo and Latter & Blum, are at fault." *Id.* at 14. In that case, plaintiffs allege the Real Estate defendants are

liable for breach of Broker's fiduciary standard of care, negligence, and negligent misrepresentation. *Id.* at 14-15. Plaintiffs also allege that Pappalardo is liable for breach of attorney's standard of care. *Id.* at 15.

On December 28, 2021, Capital One removed the case to this Court on the basis that Real Estate defendants were improperly joined to defeat diversity jurisdiction. *See* Rec. Doc. 1. Capital One then filed a motion to dismiss on January 5, 2022 for failure to state a claim. Rec. Doc. 11. On March 3, 2022, Real Estate defendants filed a motion to dismiss for lack of jurisdiction, arguing that plaintiffs failed to deny Real Estate defendants were fraudulently joined to defeat diversity jurisdiction. Rec. Doc. 18. On June 15, 2022, the Court rejected plaintiffs' argument that Real Estate defendants should be realigned with plaintiffs' interests and ordered plaintiffs to provide supplemental briefing on whether Real Estate defendants were improperly joined. Rec. Doc. 31. Plaintiffs filed supplemental memorandum on July 8, 2022, which included a motion to remand. Rec. Doc. 32. The parties then submitted responses and replies to plaintiffs' supplemental briefing. Rec. Docs. 34, 35, 38.

## A. LAW AND ANALYSIS

### A. Removal and Rule 12(b)(1) Standard

A defendant may remove a civil action if the federal district court would have had original jurisdiction over the case unless a

federal statute provides otherwise. 28 U.S.C. § 1441(a). However, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Pursuant to 28 U.S.C. § 1332(a)(1), federal district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction "requires complete diversity—if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).

The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). In reviewing motions to remand, the Court is guided by the principle that federal courts have limited jurisdiction and cannot adjudicate claims unless the authority to do so is conferred by statutory or constitutional power. *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Thus, federal courts must dismiss lawsuits whenever it appears they lack subject matter

jurisdiction. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

Any ambiguities should be construed against removal, and in favor of remand. *Id.* Ultimately, a motion to dismiss for lack of subject matter jurisdiction "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010. When considered in conjunction with other Rule 12 motions, attacks on subject matter jurisdiction should be considered before addressing attacks on the merits. *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (*per curiam*)).

### B. Improper Joinder

Removal under § 1441 requires proper joinder, which when jurisdiction is based on diversity of citizenship, includes meeting all the requirements of § 1332. *See* 28 U.S.C. § 1441(b)(2); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004); *see also Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 219-21 (5th Cir. 2018) (discussing and applying *Smallwood*). An improper joinder inquiry "must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. The Fifth Circuit has established two ways to show improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against

the non-diverse party in state court." *Id.* (internal quotations omitted) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Under the second method of demonstrating improper joinder, first "all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party," and second, the court must address "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant," meaning "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *See Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. 1981)); *Smallwood*, 385 F.3d at 573 (noting that the Fifth Circuit is dispensing with all other phrasing of the required proof and officially adopting the "no reasonable basis" standard).

To assess whether there is a reasonable basis for recovery under state law, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. Or where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder[,] . . . the district court may, in its discretion, pierce

the pleadings and conduct a summary inquiry." *Id.* (citations omitted).

### C. Prescriptive Period[2]

Claims against a real estate agent or broker are limited to damages for fraud under Louisiana Civil Code Article 1953 or for negligent misrepresentation under Louisiana Civil Code Article 2315. *Hopkins v. Coco*, 2014-1191, p. 3 (La. App. 4 Cir. 7/29/15); 174 So.3d 201, 203. Under Louisiana law, delictual actions, such as negligent misrepresentation, are subject to a one-year statute of limitations. *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 488-89 (5th Cir. 2009); *see also* La. Civ. Code Ann. art. 3492. "This prescriptive statute is strictly construed against prescription." *Durio v. Metro. Life Ins. Co.*, 653 F. Supp. 2d 656, 668 (W.D. La. 2009) (citing *Wimberly v. Gatch*, 635 So.2d 206, 211 (La. 1994)).

Prescription of a delictual action begins to run from the date that injury or damage is sustained. *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 21 (5th Cir. 2009) (citing La. Civ. Code Ann. art. 3492). "The action in damages is formed and begins to prescribe only when the tortious act actually produces damages and not on the day the act was committed." *Shepard v. St. Paul Fire and Marine Ins. Co.*, 525 F. Supp. 3d 743, 749 (W.D. La. 2021)

---

[2] Plaintiffs concede that their legal malpractice claims are time-barred; thus, the Court does not address them, and the legal malpractice claims are dismissed. *See* Rec. Doc. 32-1 at 2.

(citing *Harvey v. Dixie Graphics, Inc.*, 593 So.2d 351, 354 (La. 1992)). "Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action." *AGEM Mgmt. Servs., LLC v. First Tenn. Bank Nat'l Ass'n*, 942 F. Supp. 2d 611, 619 (E.D. La. 2014) (citing *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383, 1386 (La. 1993)) (other citations omitted). "The damage suffered must at least be actual and appreciable in quality—that is, determinable and not merely speculative, but there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action." *Shepard*, 525 F. Supp. 3d at 749 (citing *Harvey*, 593 So.2d at 354). Typically, "the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

However, if plaintiffs suffer damages from a tort before knowing that a tort was committed, then it is plaintiffs' burden to show that prescription was suspended under the doctrine of contra non valentem. *Id.* Under this doctrine, a statute of limitations or prescriptive period does not begin to run, inter alia, "where the cause of action is not known or reasonably knowable by the plaintiff," even though the ignorance is not induced by the defendant. *Carter v. Haygood*, 2004-0646, p.11 (La.

1/19/05); 892 So. 2d 1261, 1268. Thus, "prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Keenan*, 575 F.3d at 489 (citing *Campo v. Correa*, 2001-2707, p. 11-12 (La. 6/21/02); 828 So.2d 502, 510); *see also Edmundson v. Amoco Prod. Co.*, 924 F.2d 79, 83-84 (5th Cir. 2001) (citing *Goodman v. Dixie Mach. Welding & Metal Works, Inc.*, 552 So. 2d 440, 442 (La. App. 4th Cir. 1989)) ("A mere apprehension that something is wrong is not sufficient to start the running prescription unless the plaintiff either knows or should know by the exercise of reasonable diligence that there was a reasonable possibility that his damages may have been caused by another."). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *TCI Packaging, LLC v. HUB Int'l Midwest Ltd.*, No. 19-10861, 2020 WL 730329, at *5 (E.D. La. Feb. 13, 2020) (quoting *Campo*, 828 So. 2d at 510-11).

Here, Capital One claims the prescriptive period began to run in 2006 when "the alleged negligent misrepresentation occurred," meaning "when the terms of the First Amendment were discussed with the Real Estate Defendants." Rec. Doc. 35 at 6. However, Capital One conflates the year that the tortious act was committed with the time when "the tortious act actually produc[ed] damages." *See Shephard* 525 F. Supp. 3d at 749 (citing *Harvey*, 593 So. 2d at 354).

The record does not seem to reflect that Real Estate defendants' alleged negligent misrepresentation produced any damages in 2006. *See* Rec. Doc. 35 at 8; *see also* La. Civ. Code Ann. art. 3492 (stating prescription for delictual actions "commences to run from the day injury or damage is sustained"). Indeed, Capital One cites the standard for prescription commencement under Article 3492, but does not explain how "any harm [plaintiffs] incurred in agreeing to [the relevant] terms . . . occurred when they agreed to be bound by them." *See* Rec. Doc. 35 at 8-9.[3]

Instead, it seems that plaintiffs began suffering damages when they "learned that Capital One did not intend to repair its alterations or otherwise restore the property to its condition at delivery." Rec. Doc. 1-1 at 10. That is when they began incurring attorney's fees and costs related to its pursuit of its breach of contract claim. *See id.* (deciding to retain undersigned counsel to replace Pappalardo after learning of Capital One's intentions and on June 28, 2021, making "written demand on Capital One for restoration of the premises"); *see also VSE Corp.*, 2019 WL 7041855, at *1, 5 (finding plaintiff first suffered damages when it incurred attorney's fees and costs related to suit); *Harvey*, 593 So. 2d at

---

[3] Capital One suggests that the harm occurred upon signing the 2006 agreement because that is when plaintiffs agreed to the First Amendment. Rec. Doc. 35 at 9-10. Nevertheless, Capital One still does not describe how making this contractual bargain means plaintiffs incurred any injury or damages. *See VSE Corp. v. Koretzky*, No. CV 19-10827, 2019 WL 7041855, at *5 (E.D. La. Dec. 20, 2019) (distinguishing between when "the *act*" of malpractice occurred and when "*damages*" began to arise).

354 (finding plaintiff "sustained appreciable harm because he had incurred substantial accountant's and attorney's fees in investigating and informing himself of the accountant's deficiencies"); *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881 (5th Cir. 1998) (finding appellant "sustained appreciable and actual harm . . . because she was compelled to incur and pay attorney fees and legal costs in her defense"). Plaintiffs could suffer further damages if the Court does not find Capital One liable for breach of contract, but that does not mean plaintiffs have not yet suffered damages. *See Shepard*, 525 Supp. 3d at 752; *see also N.Y. Life*, 142 F.3d at 880 (finding a delictual cause of action arises "before the plaintiff sustains all or even the greater part of the damage occasioned by the delict").[4]

Still, Capital One insists that the prescriptive period commenced when plaintiffs knowingly and willingly signed the 1998 lease and First Amendment, which include the disputed terms. Rec. Doc. 35 at 7. As plaintiffs agreed to and signed the lease documents, Capital One claims plaintiffs should have then been aware of Real Estate defendants' alleged negligent misrepresentation. *Id.* at 7. Even if plaintiffs should have been aware of any negligent misrepresentation when they signed the document, which is not assumed, it does not automatically follow

---

[4] Therefore, plaintiffs' argument that "the prescriptive period has not yet commenced," because they "have pled the claim [against Real Estate defendants] in the alternative," is meritless. Rec. Doc. 32-1 at 4.

that plaintiffs incurred injury or damages at that point. *Crochet v. Bristol-Myers Squibb Co.*, 804 F. App'x 249, 252 (5th Cir. 2020) (citing *Luckett v. Delta Airlines*, 171 F.3d 295, 296 (5th Cir. 1999)) ("Damages are sustained when they are actual and appreciable and not merely speculative.").

Having constructive knowledge of a possible cause of action does not equate to incurring damages—both of which are required for the prescription period to run. *See Shepard*, 525 F. Supp. 2d at 751 (acknowledging that the prescription period began to run when the "Plaintiffs were aware they may have a cause of action against defendant" *and* "[a]s long as Plaintiffs had also suffered damages by this date"); *Harvey*, 593 So.2d at 355 (finding the prescription period began to run when the plaintiff was informed of his accountant's negligence *and* "[h]e also sustained appreciable harm"). Because plaintiffs had not yet suffered injury or damages when they signed the First Amendment, then the prescriptive period could not have begun at that time. *See AGEM*, 942 F. Supp. 2d at 619 (starting the prescriptive period not when plaintiffs signed the agreement based on alleged misrepresentations, but when plaintiffs "sustained damage" after signing the agreements); *Keenan*, 575 F.3d 483 at 485, 490-91 (starting the prescriptive period when plaintiff did not receive the payment he thought he was entitled to and knew the defendant's advice was inaccurate, not when the alleged promise was made); *MR*

*Pittman Grp., LLC v. Plaquemines Par. Gov't*, 2015-0396, p. 1, 13-14 (La. App. 4 Cir. 12/2/15); 182 So. 3d 291, 292-93, 298-99 (starting the prescriptive period not when defendants made the misrepresentation, but when plaintiff learned "that there was going to be an issue" and "had suffered appreciable damage" at a later time); *Ocean Sky Int'l, L.L.C. v. Limu Co., L.L.C.*, No. 18-0528, 2018 WL 5020044, at *11 (W.D. La. Oct. 1), *adopted by* 2018 WL 5018474 (W.D. La. Oct. 16, 2018) (starting the prescriptive period when plaintiffs suspected the claims were false, not when the statements were first made, and rejecting as a "fact issue" defendant's claims that plaintiffs should have immediately known the alleged statements were false).

Capital One's insistence that plaintiffs should have realized Real Estate defendants' alleged misrepresentations when they signed the agreement assumes Capital One's interpretation of the 1998 lease and First Amendment is correct. *See* Rec. Doc. 35 at 6-8; Rec. Doc. 38 at 4-5. The parties, nevertheless, dispute that very issue. *See* Rec. Docs. 31, 35, 38. The Court agrees that when parties sign a contract, they are "deemed in the law to know its contents;" however, the plain language of the 1998 lease and First Amendment do not necessarily demonstrate that Real Estate defendants engaged in negligent misrepresentation. *See* Rec. Doc. 35 at 7 n.1; Rec. Doc. 38; Rec. Doc. 1-1 (alleging that Capital One must restore the premises); *JPS Equip., LLC v. Cooper*, 50,506,

p. 7 (La. App. 2 Cir. 2/24/16); 188 So.3d 1106, 1110 ("A person who signs a written instrument is presumed to know its contents."). Thus, regardless of when plaintiffs sustained damages, plaintiffs reasonably could not have known of a negligent misrepresentation claim when they signed the First Amendment. *See, e.g.*, *VFS US LLC v. Vaczilla Trucking, LLC*, No. 15-02226, 2015 WL 7281619, at *1, 14 (E.D. La. Nov. 16, 2015) (finding the prescriptive period began in 2015 because "while Vaczilla was aware of the factual premises of the down payment arrangement as early as 2011, Vaczilla was not aware that VFS negligently omitted to supply correct information regarding the legality of the down payment arrangement until 2015").[5]

Thus, the prescriptive period for plaintiffs' negligent misrepresentation claim against Real Estate defendants began "shortly thereafter" April 22, 2021, when plaintiffs learned of Capital One's intentions regarding the leased premises, and therefore, when plaintiffs began incurring legal costs. *See* Rec. Doc. 1-1 at 9-10, 15 (citing "all associated damages" under the negligent misrepresentation cause of action in plaintiff's

---

[5] Capital One cites many cases to argue that plaintiffs merely attempt to challenge a fully integrated agreement, which "no longer suits the contracting party." Rec. Doc. 35 at 7. This argument addresses the matter's merits and does not consider whether plaintiffs knew or reasonably could have known that Real Estate defendants allegedly engaged in negligent misrepresentation, and whether plaintiffs sustained appreciable damages when the parties agreed to the First Amendment. Capital One does not seem to provide case support for the assertion that "when Plaintiffs agreed to such terms by executing the Agreement in 2006 . . . they incurred the damages of which they now complain." *See id.* at 8.

complaint). As plaintiffs filed suit in state court on November 5, 2021, then the prescriptive period for plaintiffs' negligent misrepresentation claim had not yet expired. *See id.*

### D. Ripeness

Even if plaintiffs' negligent misrepresentation claim is not time barred, both Capital One and Real Estate defendants believe plaintiffs' claim is unripe or premature. Rec. Doc. 35 at 9; Rec. Doc. 34 at 6-7. "Ripeness ensures that federal courts do not decide disputes that are 'premature or speculative.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)). Courts "should dismiss a case for lack of ripeness when the case is abstract or hypothetical." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)).

To determine whether a claim is ripe, the Court considers two factors: "(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." *Cochran v. U.S. Sec. and Exch. Comm'n*, 20 F.4th 194, 212 (5th Cir. 2021) (quoting *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2003)). Issues are typically fit for judicial decision, "if any remaining questions are purely legal ones." *Id.* Similarly, "a case is not ripe if

further factual development is required." *Id.* However, even if only legal inquiries remain, "there must be hardship to the parties of withholding court consideration." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 454 (5th Cir. 2022) (quoting *Choice*, 691 F.3d at 715). "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced to modify one's behavior in order to avoid future adverse consequences." *Choice*, 691 F.3d at 715 (internal quotation marks omitted).

Capital One argues that plaintiffs' claims against Real Estate defendants are not yet ripe because "Plaintiffs' claims are all expressly conditioned on an event which has not yet (and may never) occur: this Court ruling against Plaintiffs as to the correct interpretation of the contested Lease provisions." Rec. Doc. 35 at 9.[6] However, if Louisiana law indicates that plaintiffs' "right to enforce has accrued," then plaintiffs' claims against the in-state Real Estate defendants are not unripe or speculative at this time. *See Bayou Orthotic and Prosthetics Ctr., L.L.C. v. Morris Bart, L.L.C.*, 17-557, p. 4 (La. App. 5 Cir. 3/28/18); 243 So.3d 1276, 1279 (citing La. Code Civ. Proc.

---

[6] Real Estate defendants essentially argue the same. Rec. Doc. 34 at 6-7.

Ann. art. 423) ("A suit is premature if it is brought before the right to enforce the claim sued upon has accrued."); *Kelleher v. Univ. Med. Ctr. Mgmt. Corp.*, 2021-00011, p.3 (La. 10/10/21); 332 So. 3d 654, 657 ("The dilatory exception of prematurity provided for in La. C.C.P. art. 926(1) questions whether the cause of action has matured to the point where it is ripe for judicial determination."); *see also Drs. Hosp. at Renaissance, Ltd. v. Employers Ins. Co. of Wausau*, No. 7:21-cv-00418, 2022 WL 72121, at *4-5 (S.D. Tex. Jan. 7, 2022) (finding in an insurance agent case with similar facts that a claim becomes ripe when a plaintiff sustains injury in accordance with applicable substantive law).

Under Louisiana law, negligent misrepresentation is a delictual action. *Keenan*, 575 F.3d at 488-89. Plaintiffs have a right to enforce these actions when they have sustained injury or damages. *Clark*, 348 F. App'x at 21. As stated above, plaintiffs began to sustain damages when they "learned that Capital One did not intend to repair its alterations or otherwise restore the property to its condition at delivery," and subsequently, began incurring attorney's fees and costs related to its pursuit of its breach of contract claim. *See* Rec. Doc. 1-1 at 10; *see also VSE Corp.*, 2019 WL 7041855, at *1, 5; *Harvey*, 593 So. 2d at 354; *N.Y. Life*, 142 F.3d at 881. Thus, that

plaintiffs have already begun to sustain injury, indicates "fitness for judicial decision." *See Cochran*, 20 F.4th at 212.[7]

Furthermore, a case is generally fit for judicial decision when any remaining questions are purely legal ones and further factual development is not required. *Planned Parenthood*, 24 F.4th at 454 (quoting *Choice*, 691 F.3d at 715). Plaintiffs allege that "[i]f it is determined that Capital One did not breach the [Lease agreement], then plaintiffs plead in the alternative that [Real Estate defendants] are at fault for causing Plaintiffs' damages." Rec. Doc. 1-1 at 14. Meaning, whether plaintiffs' claim comes to fruition could be a *legal* question of whether Capital One breached its contract with plaintiffs. Because whether plaintiffs succeed on their breach of contract claim may not require further factual development, plaintiffs' claims against Real Estate defendants are fit for judicial decision. *See Drs. Hospital*, 2022 WL 72121, at *5 (finding the defendant "improperly

---

[7] Capital One relies on three medical malpractice cases to support its prematurity argument. Rec. Doc. 35 at 10. However, for medical malpractice cases, plaintiffs are required to first present their claims to a medical review panel. *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016) (citing La. Rev. Stat. Ann. § 40:1231.8(B)(1)(a)(i)) ("[N]o action against a health care provider may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel."). Here, there is no such statute requiring that plaintiffs bring their claims against real estate agents before a review panel, nor is there a statute compelling plaintiffs to bring their underlying breach of contract claims before any negligent representation claims. Prematurity and ripeness depends on whether any remaining questions are purely legal ones and whether plaintiffs' right to enforce their claim has accrued. *See Planned Parenthood*, 24 F.4th at 454; *Bayou Orthotic*, 243 So.3d at 1279. In this case, plaintiffs right to enforce their negligence misrepresentation claim accrues once they sustain damages. *See Clark*, 348 F. App'x at 21. Accordingly, the Court finds the aforementioned medical malpractice cases unpersuasive here.

conflated a ripe claim with a contingent one"); *C.C. Forbes, LLC v. Axis Surplus Ins. Co.*, No. 2:16-CV-94, 2016 WL 10706290, at *3 (S.D. Tex. May 31, 2016) (even when success against one defendant "might moot the claims against" another, "the presence of a defense does not make the claim hypothetical, speculative, conclusory, or unripe," for "a party may state as many separate claims or defenses as it has, regardless of consistency").

Lastly, if the Court were to decline to consider plaintiffs' claims against Real Estate defendants, plaintiffs could suffer a hardship. *See Planned Parenthood*, 24 F.4th at 454 (quoting *Choice*, 691 F.3d at 715) (stating that even if only legal inquiries remain, "there must be hardship to the parties of withholding court consideration"). Namely, dismissing and delaying consideration of plaintiff's alternative claim against Real Estate defendants risks the prescriptive period expiring before plaintiffs can bring their claim.

The prescriptive period for plaintiffs' negligent misrepresentation claim expired "shortly []after" April 21, 2022. *See* Rec. Doc. 1-1 at 9-10. Thus, if the Court were to dismiss plaintiffs' claim now, and then it decides that Capital One did not breach its contract, plaintiffs will be prescribed from bringing any negligent representation claims against Real Estate defendants in the future. *See* La. Civ. Code. Ann. art.

3492 ("Delictual actions are subject to a liberative prescription of one year.").

Accordingly, the risk of extinguishing plaintiffs' claims creates a "hardship to the parties of withholding court consideration." *See Dallas Area Transit v. Colonial Am. Casualty & Surety Co.*, No. 3:05-CV-1405-B ECF, 2006 WL 8437553, at *3 (N.D. Tex. July 11, 2006) (recognizing that if waiting for resolution on another proceeding could bar the plaintiff "from bringing its claim by the statute of limitations," then the plaintiff would be "severely prejudice[d]"); *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) ("The Supreme Court has found hardship to inhere in legal harms."); *Some, Inc. v. Hanover Ins. Co.*, No. 21-493 (BAH), 2021 WL 2935893, at *6 n.2 (D.D.C. July 13, 2021) (noting the plaintiff would experience hardship from "delay of consideration of [its] alternative claim" because it would "risk[] the running of the statute of limitations on the negligence claim"). As plaintiffs' claims against Real Estate defendants are fit for judicial decision and there could be hardship to the parties of withholding court consideration, these claims are not subject to dismissal for being unripe.

**E. Whether Plaintiffs Stated a Cause of Action**

Louisiana Civil Code Article 2315 provides a cause of action for negligent misrepresentation. *See Audler v. CBC Innovis, Inc.*,

519 F.3d 239, 249 (5th Cir. 2008). In determining whether to impose liability for this claim, courts employ a "duty-risk analysis." *Id.* (citing *Lemann v. Essen Lane Daquiris, Inc.*, 2005-1095, p.7 (La. 3/10/06); 923 So.2d 627, 632-33). This analysis requires (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of that duty; and (3) damage to the plaintiff caused by the breach." *Novak v. St. Maxent-Wimberly House Condo., Inc.*, No. 16-6835, 2018 WL 3360957, at *2 (E.D. La. June 29, 2018) (citing *Duplechin v. Adams*, 95-0480, p.6 (La. App. 1 Cir. 11/9/95); 665 So.2d 80, 84, *writ denied*, 666 So.2d 1104 (La. 1996)); *see also Soc'y of Roman Cath. Church of Diocese of Lafayette, Inc. v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 742 (5th Cir. 1997).

"A legal duty to disclose exists only where there was privity of contract or a fiduciary relationship between the parties." *Durio*, 653 F. Supp. 2d at 667 (quoting *McLachlan v. N.Y. Life Ins. Co.*, 488 F.3d 624, 628 (5th Cir. 2007)). Additionally, the breach can occur through either statement or omission. *See McLachlan*, 488 F.3d at 628 ("Louisiana provides a general negligent misrepresentation cause of action where there is a legal duty to provide correct information and the defendant fails to disclose or discloses misinformation.").

Defendants concede that Real Estate defendants had a legal duty to supply plaintiffs with correct information. *See* Rec. Doc.

34 at 5-6; Rec. Doc. 35 at 12-13; *see also Riedel v. Fenasci*, 2018-0540, p. 12 (La. App. 1 Cir. 12/28/18); 270 So. 3d 583, 592 ("A [real estate] broker stands in a fiduciary relationship to his client and is bound to exercise reasonable care, skill, and diligence in the performance of his duties."). However, the parties dispute whether plaintiffs alleged a breach of that duty. *See* Rec. Doc. 34 at 5-6; Rec. Doc. 35 at 12-13; Rec. Doc. 31-2 at 2-3.

In their complaint, plaintiffs allege that Real Estate defendants "negligently mis-represented the terms of the lease agreement to Plaintiffs as relates to Article 14, thereby breaching the standard of care applicable to real estate brokers and causing Plaintiffs' damages." Rec. Doc. 1-1 at 15. They state that Real Estate defendants "drafted the 1998 Lease document" and "advised Plaintiffs as to the terms of the 1998 Lease, including Article 14 therein." *Id.* at 11. Plaintiffs claim that because of the "advice of Pappalardo," they understood and believed that Article 14 requires Capital One to restore the premises to its condition at delivery and that failure to do so would equal a contractual breach. *Id.* Plaintiffs state they "relied on Pappalardo's advice as their real estate broker and his representation that Capital One would restore the property to its condition at delivery and based on that representation they agreed to allow Capital One to make said alterations." *Id.* However, the record does not show Mr. Pappalardo guaranteed or could ensure Capital One's compliance

with applicable terms of the lease as a whole. *See generally id.* There is also no evidence of fraud or collusion between Mr. Pappalardo and Capital One adverse to plaintiffs' interests. *Id.*

Capital One argues that "Plaintiffs' Petition for Damages is devoid of any concrete factual allegations about the alleged misrepresentations." Rec. Doc. 35 at 12. While only briefly stated, plaintiffs' petition contains factual allegations that barely support a negligent misrepresentation claim. *See* Rec. Doc. 1-1 at 12, 15. Plaintiffs allege that Real Estate defendants represented "that Capital One would restore the property to its condition at delivery." Rec. Doc. 1-1 at 12. As Capital One now refuses to restore the property, plaintiffs allege that the "representation that Capital One would restore the property to its condition at delivery" was "mis-represented." *Id.* at 12, 15.[8] That very weak conclusion  may arguably suffice for now. *Cf. Darby v. Primerica Life Ins. Co.*, No. 20-1723, 2020 WL 5517311, at *2 (E.D. La. Sept. 14, 2020) (dismissing plaintiff's negligent misrepresentation claim because, unlike here, the complaint did not "allege that [the defendant] provided misinformation, or

---

[8] Again, in claiming that "there can be no misrepresentation, negligent or otherwise, when plaintiffs were provided with, considered, and approved the clear language in the First Amendment," Capital One assumes that the language in the First Amendment is clear and that it supports a finding that Capital One is not required to restore the property. *See* Rec. Doc. 35 at 13; *see also* Rec. Doc. 38 at 3-5. The Court has not yet determined which party interprets the contract correctly.

failed to provide accurate information"; it only alleged that the defendant assisted the plaintiff); *Cormier v. Coldwell Banker*, 2014-360, p. 5 (La. App. 3 Cir 11/5/14); 150 So.3d 557, 561 (finding no negligent misrepresentation because plaintiffs never proved that the real estate agent represented an alleged discrepancy to plaintiffs).[9]

**F.   Severance Under Federal Rule of Civil Procedure 21**

In a last-ditch effort to retain federal jurisdiction, Capital One asserts that if the Court finds Real Estate defendants were not improperly joined, it should sever these defendants as dispensable and unnecessary. Rec. Doc. 27 at 18-20; Rec. Doc. 35 at 13-14.[10] Under Rule 21 of the federal rules of civil procedure, "a court may dismiss a dispensable nondiverse party." *Moss v. Princip*, 913 F.3d 508, 515 (5th Cir. 2019). In the Fifth Circuit, courts consider five factors for its Rule 21 severance analysis: "(1) whether claims arise out of the same transaction, occurrence, or series of transactions or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether

---

[9] Real Estate defendants seem to suggest that because plaintiffs bring a similar claim against Pappalardo, in his capacity as an attorney, then plaintiffs fail to state a claim. *See* Rec. Doc. 34 at 6. However, as established above, plaintiffs may allege a separate claim against Pappalardo in his capacity as a real estate agent, even if the factual allegations underpinning this claim are similar to those underpinning plaintiffs' claim against him as an attorney. *See Cormier*, 150 So. 3d at 561 (recognizing a claim against a real estate agent for negligent misrepresentation).

[10] Neither Real Estate defendants nor plaintiffs directly address these arguments in their briefing.

prejudice would be avoided if severance was granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Defense Distrib. v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022). "There is no prescribed formula for determining in every case whether a person is an indispensable party." *Moss*, 913 F.3d at 515.

Here, Capital One contends that plaintiff's claims against Real Estate defendants are "materially distinct" from those against Capital One and include separate "factual underpinnings."[11] Rec. Doc. 27 at 19-20; Rec. Doc. 35 at 13-14. Moreover, Capital One seems to suggest that because plaintiffs' claims against Capital One sound in contract and those against Real Estate defendants sound in negligence, Real Estate defendants should be severed to preserve diversity. Rec. Doc. 27 at 19. In considering the five Fifth Circuit factors, however, the Court finds that Real Estate defendants are not dispensable parties warranting severance. *See Defense Distrib.*, 30 F.4th at 431.

First, the claims arise out of the same transaction or occurrence because they are both based on the negotiation, drafting, and execution of the 1998 lease and First Amendment. *See BroadStar Wind Sys. Grp. Ltd. Liab. Co. v. Stephens*, 459 F. App'x 351, 358 (5th Cir. 2012) (per curiam) (finding claims arose out of

---

[11] Notably, Capital One does not explain how the factual allegations underpinning the claims are separate. *See* Rec. Doc. 27 at 18-20.

the same transaction "when the contract's language will control the disposition" of both plaintiffs' claims); *Poincon v. Offshore Marine Contractors, Inc.*, No. 18-2748, 2018 WL 5708968, at *3 (E.D. La. Nov. 1, 2018) ("Transactions or occurrences satisfy the series of transactions or occurrences requirement of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences.").

Second, both claims present common questions and factual circumstances concerning whether the 1998 lease and First Amendment should be interpreted to require Capital One to restore the property to its condition at delivery. *See, e.g.*, *Beechgrove Redev., LLC v. Carter & Sons Plumbing, Heating and Air-Conditioning, Inc., et al.*, No. 07-382713, 2009 WL 382713, at *6-7 (E.D. La. Feb. 11, 2009) (declining severance for distinct causes of action, especially when judgment on some of the claims could render other claims moot); *cf. Global Oil Tools, Inc. v. Barnhill*, Nos. 12-1507, 12-3041, 2013 WL 3070840, at *6 (E.D. La. June 17, 2013) (finding defendants should be severed when "the potential liability of one defendant was wholly independent of the other"). Plaintiffs' negligent misrepresentation claims present additional questions not included in their contractual claim; however, "a court is required to determine whether there is at least one common question of law, not whether all of the claims in a case involve the same question of law." *Defense Distrib.*, 30 F.4th at 432

(quoting *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 521 (5th Cir. 2010)).

Third, Capital One does not explain how judicial economy or settlement would be facilitated by severing plaintiffs' claims. *See* Rec. Doc. 27 at 19-20; Rec. Doc. 35 at 13-14. Fourth, plaintiffs might be prejudiced if their claims against Real Estate defendants are severed and dismissed, as their claims might be time barred if newly brought in state court. *See, e.g., Dallas Area Transit*, 2006 WL 8437553, at *3 (recognizing that if waiting for resolution on another proceeding could bar the plaintiff "from bringing its claim by the statute of limitations," then the plaintiff would be "severely prejudice[d]"). Fifth, it does not seem that different witnesses and documentary proof are required for the separate claims because they all center on the drafting, negotiation, and execution of the 1998 lease and First Amendment. *See generally*, Rec. Doc. 1-1.[12]

---

[12] Capital One relies heavily on a non-binding out-of-circuit case to demonstrate that Real Estate defendants are unnecessary and dispensable parties. *See* Rec. Doc. 27 at 18-19 (citing *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009)). In *Joseph v. Baxter International*, the court found that the medical malpractice claims against the healthcare providers differed from the plaintiffs' products liability claims against the manufacturer. Moreover, the health care providers were dispensable because the plaintiffs retained an adequate remedy in state court. *Id.* The Court finds that the reasoning in *Joseph* does not apply here. Plaintiffs might not have an adequate remedy in state court, as their claims could now be time-barred. *See* Rec. Doc. 1-1 at 9-10, 15 (indicating that the prescriptive period began shortly after April 22, 2021); La. Civ. Code art. 3492 ("Delictual actions are subject to a liberative prescription of one year."). Additionally, the claims here are not independent like the ones presented in *Joseph*. *See Global Oil*, 2013 WL 3070840, at *6 (finding defendants should be severed when "the potential liability of one defendant was wholly independent of the other").

Accordingly, as the Court finds Real Estate defendants were neither improperly joined nor should be severed as dispensable nondiverse parties, the Court finds it lacks jurisdiction to hear the merits of plaintiffs' claims.

New Orleans, Louisiana this 4th day of August, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE